IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
SAVANNAH DIVISION

DIAMOND CRYSTAL BRANDS, INC. )
and DIAMOND CRYSTAL SALES, )
LLC, )
 )
  Plaintiffs, )
 )
 v. ) CIVIL ACTION NO. CV407-42
 )
FOOD MOVERS INTERNATIONAL, )
INC., )
 )
  Defendant. )
_____)

# O R D E R

Before the Court is Defendant Food Movers International's Motion to Dismiss. (Doc. 5.) Defendant asserts that this case should be dismissed for lack of personal jurisdiction. After careful consideration, the Court finds that the Motion to Dismiss must be **DENIED**.

## BACKGROUND[1]

This is a breach of contract action that arises out of the sale of artificial sweetener. Plaintiff Diamond Crystal Brands, Inc., ("Diamond") is a manufacturer of sugar and sweetening products with a manufacturing plant located in Savannah, Georgia. Defendant Food Movers International, Inc. ("Food Movers") is an

---

[1] On a motion to dismiss for lack of personal jurisdiction, the facts must be viewed in the light most favorable to the nonmoving party. Robinson v. Giarmarco & Bill, P.C., 74 F.3d 253, 255 (11th Cir. 1996).

international seller of sugar and sweetening products with its sole office located in California. Food Movers transacts with various manufacturers to purchase products in bulk. These transactions are also facilitated by outside food brokers. Nasser Company, Inc. ("Nasser") is a food broker that markets food products for Diamond. After the transaction for purchase is complete, Food Movers immediately resells the products to its customers. These customers accept delivery of the products from the manufacturer, and personally brand the products for resale to the public.

The events giving rise to this litigation began when Diamond and Nasser contracted with Food Movers in the fall of 2005. Diamond sent Scott Seibel ("Seibel"), its California based food manager, and a representative of Nasser to Food Movers' headquarters in California. As a result of the negotiations, Diamond sold Splenda to Food Movers in 14 transactions that took place from October 2005 to January 2006. The purchases included approximately 11,000 cases of Splenda per month for more than $1,935,576.00.

The parties agreed that Diamond would tender the goods in Savannah, Georgia. However, the circumstances surrounding the delivery of the sweetener are hotly contested. Timothy L. Clemm ("Clemm") is the Vice President of Marketing for Diamond and was involved in the negotiations at Food Movers' headquarters. (Clemm

Aff. ¶ 2, Tab B.) He maintains that Diamond initially offered the product delivery as F.O.B. Visalia, California.² (Id. ¶ 3, Tab B.) However, Clemm contends that Food Movers asked that the terms be changed to F.O.B. Savannah.³ Id. Food Movers maintains that after purchase orders were sent to Nasser in California, it immediately resold the Splenda to third-party customers who were responsible for pick-up at the Savannah site. (T. LaMonica Aff. ¶ 13-14.) Therefore, Food Movers contends that it was not involved in pick-up of the sweetener. Food Movers was invoiced from Diamond's plant in Savannah, Georgia. Purchase orders all specified customer pick-up.⁴ (See, e.g., Purchase Order No. 14704, filed as Exhibit A to A. LaMonica Aff.) Pick-up was recorded as occurring via "buyer's

---

² The term F.O.B. means "free on board." "[W]hen the term is F.O.B. the place of destination, the seller must at his own expense and risk transport the goods to that place and there tender delivery of them in the manner provided in this Article." U.C.C. § 2-319(1)(b) (1978).

³ Thomas LaMonica ("T. LaMonica"), the Vice President of Sales for Food Movers, contends that Seibel informed him that delivery was necessary at the manufacturing site in Savannah, Georgia due to the volume of delivery. (T. LaMonica Aff. ¶ 10.) Furthermore, LaMonica contends that Clemm never had direct contact with Food Movers. (Id. ¶ 9.)

⁴ Food Movers argues that "customer" referred to its third-party customers who were responsible for pick-up of the delivery. (T. LaMonica Aff. ¶ 14-17.)

3

truck.⁵" (See, e.g., Bill of Lading No. 775788, attached to Richtman Aff., Tab C.)

Food Movers sent payments by either mail or wire transfer to Diamond in Georgia. Diamond alleges that Food Movers failed to pay for purchases made on January 13 and 18, 2006, for a total of $288,111.60. Food Movers' alleged failure to pay for these two transactions gave rise to the present litigation.

Diamond filed a Complaint against Food Movers in the Superior Court of Chatham County on February 28, 2007 seeking damages in the amount of $288,111.60. Food Movers removed the case to this Court on March 22, 2007. On April 6, 2007, Food Movers filed the instant Motion to Dismiss for lack of personal jurisdiction under Federal Rule of Civil Procedure 12(b)(1).

**ANALYSIS**

I.  Standard of Review

On a motion to dismiss for lack of personal jurisdiction involving no evidentiary hearing, the Plaintiff bears the burden of establishing a prima facie case of jurisdiction over the non-resident defendant. Robinson v. Giarmarco & Bill, P.C., 74 F.3d 253, 255 (11th Cir. 1996). (citing Madara v. Hall, 916 F.2d 1510,

---

⁵ Food Movers contends that it did not hire or communicate with any of the carriers identified on the Bill of Lading. (T. LaMonica Aff. ¶ 16.) Instead, Food Movers' customers were responsible for hiring the carriers. (Id. ¶ 17.)

4

1514 (11th Cir. 1990)). In order to establish a prima facie case, the plaintiff must present "enough evidence to withstand a motion for directed verdict." Id. at 255. The allegations set forth in the complaint must be regarded by the court as true, "to the extent they are uncontroverted by defendant's affidavits." Id. Furthermore, when the parties' evidence conflicts, "the district court must construe all reasonable inferences in favor of the plaintiff." Id.

II. The Georgia Long Arm Statute and Due Process

A court may only exercise personal jurisdiction over a nonresident defendant in accordance with the state long-arm statute and the Due Process Clause of the United States Constitution. Nippon Credit Bank, Ltd. v. Matthews, 291 F.3d 738, 746 (11th Cir. 2002). Federal courts in Georgia are bound by the Georgia Long Arm Statute. Id. In breach of contract cases, personal jurisdiction may be exercised under the Georgia Long Arm Statute if the nonresident "[t]ransacts any business within this state." O.C.G.A. § 9-10-91(1). The Supreme Court of Georgia has held that because this section of the Georgia Long Arm Statute contains no explicit limiting conditions, such as the requirement of physical presence, a literal construction "grants Georgia courts the unlimited authority to exercise personal jurisdiction over a nonresident who transacts any business in this State." Innovative Clinical &

Consulting Serv., LLC v. First Nat'l Bank of Ames, 279 Ga. 672, 675, 620 S.E.2d 352 (2005) (overruling all prior cases following a narrower interpretation of "transacts any business"). The statute confers jurisdiction "to the maximum extent permitted by procedural due process." Id.

Under Georgia law, therefore, "[j]urisdiction exists on the basis of transacting business in this state if (1) the nonresident defendant has purposefully done some act or consummated some transaction in this state, (2) if the cause of action arises from or is connected with such act or transaction, and (3) if the exercise of jurisdiction by the courts of this state does not offend traditional fairness and substantial justice." Aero Toy Store, LLC v. Grieves, 279 Ga. App. 515, 518 S.E.2d 734 (2006). The initial two prongs of the jurisdictional test are used to determine whether the defendant has sufficient minimum contacts with the forum. Id. Specifically, a defendant will be fairly apprised of his duty to defend himself in a foreign state if the defendant has "purposefully directed" his activities at residents of the forum, and if the litigation results from alleged injuries that "arise out of or relate to" those activities. Burger King Corp. v. Rudzewicz, 471 U.S. 462, 472, 104 S. Ct. 2174, 85 L. Ed. 2d 528 (1985)(citations omitted).

Modern day contracts are frequently accomplished through communications that obviate the need for physical presence within a state. Burger King, 471 U.S. at 476. Mail and telephone contacts are sufficient to confer jurisdiction. Bank of Ames, 279 Ga. at 676. Where the forum state is the point for payment and delivery, "the contract logically require[s] contact with the forum." S & Davis Int'l Inc. v. Yemen, 218 F.3d 1292, 1304 (11th Cir. 2000)(emphasis in original). Courts often find that jurisdiction lies where the contract is formed or where it contemplates performance. Burger King, 471 U.S. at 479. "[P]arties who reach out beyond one state and create continuing legal obligations with citizens of another state are subject to regulations and sanctions in the other State for the consequences of their activities." Id. at 473.

If minimum contacts are established, courts may look to several factors to determine fairness, including "the burden on the defendant; the forum State's interest in adjudicating the dispute; the plaintiff's interest in obtaining convenient and effective relief; the interstate judicial system's interest in obtaining the most efficient resolution of controversies; and the shared interest of the several States in furthering fundamental substantive social policies." World-Wide Volkswagon Corp. v. Woodson, 444 U.S. 286, 292, 100 S. Ct. 559, 62 L. Ed. 2d. 490 (1980)(citations omitted).

7

III. Defendant's Motion to Dismiss

Food Movers contends that it lacks sufficient minimum contacts to warrant personal jurisdiction in the state of Georgia. It argues that the only contact with the forum state has been in the form of mail or wire payments, which it maintains are not enough to establish minimum contacts. Furthermore, Food Movers claims that jurisdiction would create an unfair burden, because the company is a small, family owned business that has no other contacts with Georgia. In addition, Food Movers claims that suit would be more appropriate in California, because both parties have offices in that state.

Diamond contends that by making regular payments over a three month period, Food Movers reached out and made contact with the forum state. Furthermore, Diamond argues that Georgia retains personal jurisdiction over Food Movers in this case because the entire performance of the contract took place in Georgia. Diamond asserts that Georgia has an important interest in protecting its citizens from the type of contract breach at issue in this case. Diamond also contends that fairness is not harmed by fortuitous or random contact, because evidence shows that Food Movers was transacting business with Diamond for approximately three months.

Based on the facts, the Court finds that Food Movers established minimum contacts with Georgia. It is undisputed that

Food Movers sent payments for the bulk sweetener to Diamond's plant in Georgia. These payments represent a "purposeful activity directed at the forum state" that continued for approximately three months. During negotiations, Food Movers forecasted its contact with Georgia by estimating a purchase of more than 11,000 cases of Splenda over a three month period. Food Movers established minimum contacts by sending payments to Georgia in connection with 14 transactions between the parties. Furthermore, the cause of action arises out of these contacts because the alleged nonpayments were due to be paid in Georgia.

Food Movers also established minimum contacts in this case because the entire performance of the contract took place in Georgia. Diamond's contention that Food Movers requested to change the terms of delivery to F.O.B. Savannah shows that Food Movers intended, from the beginning of the parties' relationship, to purposefully direct its activities at the forum state. Although these negotiations took place at Food Movers' headquarters in California, contact with Georgia was accomplished when the product was delivered at Diamond's manufacturing plant in Savannah.

Food Movers bought sweetener that was located in Georgia and resold that sweetener to customers who completed the transaction by retrieving the product in Georgia. While Food Movers claims that it was not, itself, responsible for pick-up of the deliveries, it

admits to selling the products to third-party customers who were responsible for receiving deliveries at the Savannah plant. Food Movers' argument that "customer pick-up" and "buyer's truck" both related to third-party customers does not eliminate the contacts that it established when it chose this state as the point of delivery and later instructed third-party customers to arrange for pick-up in Georgia. Food Movers' conduct and knowledge shows that it purposefully conducted business within the forum state. With Georgia serving as the point of payment and delivery, the contract in this case "logically require[d] contact with the forum." S & Davis Int'l Inc., 218 F.3d at 1304. As such, Food Movers should have been aware that any failure to complete the terms of the contract could subject it to suit in Georgia.

The parties' actions in this case are similar to those taken in Southwest Offset, Inc. v. Hudco Publ'g Co., 622 F.2d 149 (5th Cir. 1980).[6] In that case, personal jurisdiction over the defendant was upheld based upon (1) soliciation by the plaintiff; (2) multiple orders from the defendant; (3) no visit to the forum state by the defendant; (4) manufacture of the product in the forum state; (5) payment to the forum state; and (6) delivery F.O.B. in the forum state. Id. at 149-152. The Court of Appeals for the

---

[6] In Bonner v. Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981), the Eleventh Circuit adopted at binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981.

Fifth Circuit found that the defendant, an Alabama corporation, had established minimum contacts with Texas when it entered into a contract with a Texas corporation for the publishing of telephone directories, and performance of the contract primarily took place in Texas. Personal jurisdiction was appropriate in the forum state because the defendant "could expect that Texas law might govern the enforcement of their contracts, since a substantial part of the expected performance would occur in Texas." Id. at 152. Personal jurisdiction is similarly appropriate in the case before the Court, because multiple orders were placed over a period of three months; the sweetener was manufactured in Georgia; payment was sent by Food Movers to Georgia; and delivery occurred F.O.B. Savannah, Georgia.

Finally, personal jurisdiction in this case would not be unfair. Although Food Movers argues that it is a small business with offices exclusively in California, "often the interests of the plaintiff and the forum in the exercise of jurisdiction will justify even the serious burdens placed upon the alien defendant." S & Davis Int'l, 218 F.3d at 1305. The state of Georgia has an interest in protecting against, and adjudicating, contract breaches that occur within the state. Georgia is the appropriate forum, because the entire performance of the contract took place at Diamond's manufacturing plant in Savannah, Georgia. Food Movers engaged in a three month relationship with Diamond, and therefore,

Georgia is not a foreign state. The relationship between the parties was substantial enough to warrant the exercise of personal jurisdiction over Food Movers in Georgia.

**CONCLUSION**

In light of the foregoing analysis, the Court finds that Food Movers is subject to personal jurisdiction in the state of Georgia. Accordingly, Defendant's Motion to Dismiss is **DENIED**.

SO ORDERED, this 3rd day of August, 2007.

WILLIAM T. MOORE, JR., CHIEF JUDGE
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA