IN THE UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF GEORGIA
SAVANNAH DIVISION

DIAMOND CRYSTAL BRANDS, INC. )
and DIAMOND CRYSTAL SALES, )
LLC, )
)
)
Plaintiffs, )
)
v. ) CASE NO. CV407-42
)
FOOD MOVERS INTERNATIONAL, )
INC., )
)
Defendant. )
)

## O R D E R

Plaintiffs Diamond Crystal Brands, Inc. and Diamond Crystal Sales, LLC (collectively "Diamond Crystal") have filed a Motion for Summary Judgment on Food Movers International's counterclaims for antitrust violation and breach of contract. (Doc. 44.) For the following reasons, this Motion is **GRANTED**.[1]

### BACKGROUND

This action arose out of a contract for the sale of Splenda, an artificial sweetener. Defendant Food Movers is a California corporation engaged in the purchase and resale of wholesale quantities of food products. Diamond Crystal is a manufacturer of sugar and sweetening products with a manufacturing plant located in Savannah, Georgia. Diamond

---

[1] Because all claims have been adjudicated, Food Movers' "Request for Certificate Under Rule 54(b)" (Doc. 95) is **DENIED AS MOOT**.

Crystal is owned by Hormel Foods Corporation. McNeil Nutritionals, which is not a party to this litigation, distributes Splenda throughout the United States. Diamond Crystal maintains that McNeil Nutritionals authorizes Diamond Crystal to distribute Splenda only in the food services sector. (Pl.'s Stmt. Material Facts ¶ 2.)

In August 2005, Food Movers was approached by Nasser Company, a food broker, regarding a potential venture by which Food Movers would resell excess quantities of Splenda manufactured by Diamond Crystal. Diamond Crystal and Food Movers agreed that Food Movers would receive a discounted rate on the Splenda if it ordered a specified minimum amount per month.

Between August 2005 and January 2006, Diamond Crystal and Food Movers contracted regularly for the sale of Splenda, through purchase orders accepted by Nasser on behalf of Diamond Crystal. After placing an order for Splenda, Food Movers would resell the entire order to a customer who would accept delivery directly from Diamond Crystal.

On December 21, 2005 and January 5, 2006, Food Movers faxed purchase orders for shipments of Splenda. According to Food Movers, Diamond Crystal breached its contract by refusing to deliver these two orders. Food Movers alleges that Scott Seibel, Region Distribution Manager for Diamond Crystal,

2

informed Thomas LaMonica, Vice President of Sales at Food Movers, that McNeil Nutritionals was pressuring Diamond Crystal about sales restrictions and refusing to honor its pricing commitments. (LaMonica Aff. ¶ 5.) Seibel allegedly informed LaMonica that if Food Movers agreed in writing to restrict its sale of Splenda to the food services market, Diamond Crystal would ship the two outstanding orders. (Id. ¶ 36.) Food Movers signed a contract agreeing to limit its sales of Splenda to the food services market. (See Def.'s Ex. B.)

Shortly thereafter, LaMonica met with Karl Kaiser, President of Diamond Crystal. Kaiser allegedly informed LaMonica that "the alleged product breach [by Food Movers] was not true"[2] and told him that due to "external pressure from McNeil [Nutritionals]," Diamond Crystal would be unable to continue its relationship with Food Movers. (See id. ¶ 45.)

On February 28, 2007, Diamond Crystal filed a complaint in the Superior Court of Chatham County for breach of contract based upon Food Mover's failure to pay for two shipments it had received. Food Movers removed the case to this Court on March 22, 2007. On August 3, 2007, the Court denied Food Movers' motion to dismiss for lack of personal jurisdiction. On April

---

[2] In contrast, Mr. Kaiser states that McNeil Nutritionals "informed him that it had discovered that Splenda traceable to Diamond Crystal's Savannah plant was being diverted into grocery stores" in violation of the agreement between Diamond Crystal and McNeil Nutritionals. (Kaiser Aff. ¶ 9-10.)

3

4, 2008, the Court denied Food Movers' requests to (1) modify the scheduling order, (2) obtain an extension of time to pursue discovery, and (3) transfer venue. On June 20, 2008, the Court granted Diamond Crystal's Motion for Judgment on the Pleadings with respect to its breach of contract claim.

Diamond Crystal filed the instant Motion on January 18, 2008, arguing that summary judgment should be granted on all of Food Movers' counterclaims: (1) violation of federal antitrust law, (2) violation of California unfair competition and antitrust law, and (3) breach of contract.

## ANALYSIS

### I. Summary Judgment Standard

Summary judgment shall be rendered "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'" Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587, 106 S. Ct. 1348, 1356, 89 L. Ed. 2d 538 (1986) (citing Fed. R. Civ. P. 56 advisory committee notes). Summary judgment is appropriate when the nonmovant "fails to make a showing sufficient to establish the

4

existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S. Ct. 2548, 2552, 91 L. Ed. 2d 265 (1986). The substantive law governing the action determines whether an element is essential. DeLong Equip. Co. v. Wash. Mills Abrasive Co., 887 F.2d 1499, 1505 (11th Cir. 1989).

As the Supreme Court explained:

> [A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact.

Celotex, 477 U.S. at 323. The burden then shifts to the nonmovant to establish, by going beyond the pleadings, that there is a genuine issue as to facts material to the nonmovant's case. Clark v. Coats & Clark, Inc., 929 F.2d 604, 608 (11th Cir. 1991).

The Court must review the evidence and all reasonable factual inferences arising from it in the light most favorable to the nonmovant. Matsushita, 475 U.S. at 587-588. However, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." Id. at 586. A mere "scintilla" of evidence, or simply conclusory allegations, will not suffice. See, e.g., Tidwell v. Carter

5

Prods., 135 F.3d 1422, 1425 (11th Cir. 1998). Nevertheless, where a reasonable fact finder may "draw more than one inference from the facts, and that inference creates a genuine issue of material fact, then the Court should refuse to grant summary judgment." Barfield v. Brierton, 883 F.2d 923, 933-34 (11th Cir. 1989).

II. **Antitrust Counterclaims**

   A. **Federal Antitrust Claim**

In order to survive summary judgment on a claim of conspiracy to fix prices in violation of section 1 of the Sherman Act, a plaintiff must establish both a conspiracy and restraint of trade. Sherman Act, 15 U.S.C. § 1. Diamond Crystal maintains that Food Movers has failed to establish the latter.[3]

In examining whether Food Movers has shown a restraint of trade, the Court applies a rule-of-reason analysis,[4] in which the

---

[3] Diamond Crystal does not argue that Food Movers has failed to demonstrate a conspiracy. However, summary judgment would also be appropriate on that ground. The conspiracy alleged by Food Movers is between Hormel, a parent company, and Diamond Crystal, a subsidiary. (First Am. Countercompl. at 11-13; Def's Resp. at 9.) A parent company and its subsidiary are deemed to be one entity incapable of producing the duality required for an antitrust conspiracy. Copperweld Corp. v. Independence Tube Corp., 467 U.S. 752, 774, 104 S. Ct. 2731, 81 L. Ed. 2d 628 (1984).

[4] Although Food Movers claims that Diamond Crystal's actions constitute a per se antitrust violation, Food Movers presents no evidence to support its claim. "The presumption in cases brought under section 1 of the Sherman Act is that the rule-of-reason standard applies." Seagood Trading Corp. v. Jerrico, Inc., 924 F.2d 1555, 1567 (11th Cir. 1991) Courts apply the per se rule

inquiry is limited to assessing the "market impact" of the restraint on competition. Nat'l Soc'y of Prof'l Eng'rs v. United States, 435 U.S. 679, 691 n.17, 98 S. Ct. 1355, 55 L. Ed. 2d 637 (1978). The plaintiff must define a relevant economic market which it claims would be impacted by the defendant's alleged restraint on trade. See Retina Assoc., P.A. v. S. Baptist Hosp. of Fla., Inc., 105 F.3d 1376, 1383 (11th Cir. 1997)(per curium). "Construction of a relevant economic market cannot be based upon lay opinion testimony," and the absence of economic expert testimony may require summary judgment in favor of the defendant. Am. Key Corp. v. Cole Nat'l Corp., 762 F.2d 1569, 1579 (11th Cir. 1985). Additionally, courts routinely dismiss cases where a plaintiff alleges monopolization of, or restraint of trade in, a market consisting only of defendant's own product. See, e.g., Tanaka v. Univ. S. Cal., 252 F.3d 1059, 1062-65 (9th Cir. 2001); Elliott v. United Ctr., 126 F.3d 1003, 1005 (7th Cir. 1997).

Here, in arguing that Diamond Crystal committed an unreasonable restraint of trade, Food Movers attempts to define the relevant economic market as a single-product market for

---

"only when history and analysis have shown that in sufficiently similar circumstances the rule of reason unequivocally results in a finding of liability." Consultants & Designers, Inc. v. Butler Serv. Group, Inc., 720 F.2d 1553, 1562 (11th Cir. 1983). In this case, Food Movers has not overcome the presumption that the rule-of-reason standard applies.

Splenda alone. However, Food Movers offers neither evidentiary support nor expert testimony for its argument.[5] Instead, Food Movers asks the Court to take judicial notice of the fact that Splenda occupies its own market.[6] The Court declines to do so. And in any case, a market consisting solely of Splenda – defendant's own product – would be subject to dismissal. See Tanaka, 252 F.3d at 1065.

Because Food Movers has failed to properly define or produce evidence of a relevant economic market, Diamond Crystal's Motion for Summary Judgment is **GRANTED** as to Food Movers' federal antitrust claim.

C. **State Antitrust Claim**

In its Complaint, Food Movers alleges violations of various provisions of the California Unfair Practices Act: (1) Cal. Bus. & Prof. Code §§ 17200 and 17001 (defining unfair competition and stating the purpose of the statute); (2) sections 17031 and 17040 (defining and prohibiting locality discrimination); (3)

---

[5] Pursuant to the Court's Scheduling Order, the last day for Food Movers to furnish expert witness reports was October 12, 2007. Food Movers did not furnish an expert witness report at that time.

[6] In support of its request, Food Movers has provided the Court with a Wall Street Journal article which discusses McNeil Nutritional's attempts to portray Splenda as a natural or non-artificial sweetener. Food Movers contends that these marketing efforts prove that Splenda occupies its own market, independent of other artificial sweeteners. However, this article actually works against Food Movers' argument, because it concerns a "battle between makers of artificial sweeteners," including McNeil Nutritionals. (See Def.'s Ex. 2.)

section 17045 (prohibiting rebates and secret discounts which threaten or destroy competition); (4) section 17049 (prohibiting schemes to further sales below cost); and (5) sections 17046, 17047, and 17048 (making it illegal to threaten, intimidate, solicit, or collude to violate the statute). Diamond Crystal argues that Food Movers has failed to allege any facts which would support a violation of any of these provisions. The Court agrees.

First, Food Movers does not suggest that Diamond Crystal discriminated in price among different California localities, as required for a violation of section 17041. Food Movers alleges only that the discrimination occurred "against certain customers and regions of the United States." (First Am. Countercl. ¶ 25.) Second, Food Movers does not allege (and presents no evidence) that Diamond Crystal engaged in secret discounts or rebates to Food Movers' detriment, as required for violations of sections 17045 and 17049. Third, there is neither allegation nor evidence that Diamond Crystal sold below cost. Finally, Food Movers has failed to support its claim of unfair competition, which requires more than a decision not to do business with a competitor. See People's Choice Wireless Inc. v. Verizon Wireless, 31 Cal. Rptr. 3d 819, 824-25 (Cal. Ct. App. 2005); Cal. Bus. & Prof. Code § 17042 ("Nothing in this chapter prohibits . . . selection of customers.").

Because Food Movers has presented no evidence - or even argument - supporting the alleged violations of the California Code, Diamond Crystal's Motion for Summary Judgment is **GRANTED** with respect to the California antitrust claims.[7]

### III. Contract Counterclaim

In its First Amended Answer and Counterclaim, Food Movers alleges that an over-reaching contract arose through Diamond Crystal and Food Movers' course of conduct between August 2005 and January 2006. Food Movers alleges that Diamond Crystal committed a breach of this purported contract by failing to ship two purchase orders. Based upon these allegations, there are two potential breaches of contract: (1) failure to fulfill the purchase orders, and (2) failure to fulfill an over-reaching contract arising from the parties' course of conduct.

#### A. Choice of Law

The first issue before the Court is whether the purported contracts are governed by Georgia or California law. A federal court exercising diversity jurisdiction must resolve a choice of law issue by examining the conflicts rules of the state in which it sits. Klaxon Co. v. Stentor Elec. Mfg. Co., 313 U.S. 487,

---

[7] Food Movers argues that it may "borrow" its federal violation to support or sustain its state antitrust claims. (Def.'s Resp. at 14-15.) Even if such borrowing were possible in theory, in this case the Court has found that no federal violation occurred.

10

496, 61 S. Ct. 1020, 85 L. Ed. 1477 (1941). In Georgia, choice of law in suits based on contract is as follows:

> [Contracts] are to be governed as to their nature, validity, and interpretation by the law of the place where they were made, except where it appears from the contract itself that it is to be performed in a State other than that in which it was made, in which case . . . the laws of that sister State will be applied.

Gen. Tel. Co. of Se. v. Trim, 252 Ga. 95, 95, 311 S.E.2d 460 (1995)(internal quotation omitted). However, federal courts sitting in Georgia must apply Georgia law to the application of the statute of frauds, even if the contract was executed and intended to be performed in another state. Thomas v. Clarkson, 125 Ga. 72, 54 S.E. 77, 80, (1906); Obear v. First Nat'l Bank of Birmingham, 97 Ga. 587, 25 S.E. 335, 336 (1895). This is true because Georgia courts - in contrast with the courts of some states - have taken the position that the question of whether a contract violates the statute of frauds is "one relating exclusively to the remedy." Id.

In this case, the contract was executed in California, but the entire performance of the contract (delivery of the Splenda and payment) was to take place in Georgia. Accordingly, Georgia state law governs the "nature, validity, and interpretation" of the alleged contract, and the statute of frauds must be satisfied according to Georgia law.

## B. Purchase Orders

Diamond Crystal argues that, to the extent a contract existed regarding the two purchase orders,[8] it did not comply with the statute of frauds and was therefore unenforceable. Although Food Movers does not dispute that the purported contract failed to comply with the statute of frauds, it contends that equitable estoppel "takes the contract out of the Statute of Frauds." (Def.'s Resp. at 18.)

The statute of frauds bars enforcement of a purported contract for the sale of goods for $500.00 or more unless the contract is set forth in a "writing sufficient to indicate that a contract for sale has been made between the parties and signed by the party against whom enforcement is sought or by his authorized agent or broker." O.C.G.A. § 11-2-201(1).

The doctrine of equitable estoppel may apply "to prevent a party from denying at the time of litigation a representation that was made by that party and accepted and reasonably acted upon by another party with detrimental results to the party that acted thereon." Wilson v. Keheley & Co., 177 Ga. App. 769, 770, 341 S.E.2d 245 (1986). The doctrine "presupposes that one party has a defense to the imposition of contractual liability but, by reason of his conduct, is estopped to assert it." Gainesville

---

[8] Diamond Crystal also claims that it never accepted the contract. However, the Court finds that even if there had been acceptance, the statute of frauds bars enforcement.

12

Glass Co., Inc. v. Don Hammond, Inc., 157 Ga. App. 640, 644, 278 S.E.2d 182, (1981)(citing Pitcher & Manda v. Lowe, 95 Ga. 423, 22 S.E. 678 (1894)).

In this case, Diamond Crystal allegedly informed Food Movers that, if Food Movers would agree in writing not to supply Splenda outside of the food services market, Diamond Crystal would proceed to fulfill the two outstanding purchase orders. (DiMonica Aff. ¶ 36.) Assuming the truth of this allegation, Food Movers has provided no evidence that it acted upon this representation "with detrimental results." The only action that Food Movers claims it took in reliance upon Diamond Crystal's promise was to agree to limit its potential customer base. Standing alone, this is insufficient to prevent Diamond Crystal from asserting the statute of frauds.

The actions which Food Movers claims were harmful – for example, Food Movers' locating new Splenda customers and promising the two unfulfilled shipments to a new customer – took place before Diamond Crystal's promise and therefore could not have been performed "in reliance" upon it. Accordingly, the purported contract of the two purchase orders is barred by the statute of frauds.

C. **Over-reaching Contract for the Foreseeable Future**

Food Movers has simply presented no evidence that would permit a conclusion that the parties entered into any

13

overreaching contract through a course of conduct. Food Movers has neither alleged nor proved offer and acceptance. There are no definite terms, and neither party provided consideration for the purported long-term contract. See O.C.G.A. § 13-1-1. If Food Movers' claims were valid, it would mean that any two companies doing business on a semi-regular basis would be deemed to have automatically entered into a contract "for the foreseeable future." This cannot be the case.

In order to establish breach of contract, Food Movers must demonstrate that a valid contract exists. It has failed to do so in this case, therefore summary judgment is appropriate. See Rice-Lamar v. City of Ft. Lauderdale, Fla., 232 F.3d 836, 840 (11th Cir. 2000)("If the non-moving party fails to make a sufficient showing on an essential element of [its] case . . . , then the court must enter summary judgment for the moving party.").

The Court notes that even if a distributorship contract had arisen automatically from the parties' conduct over time, such a contract would violate the statute of frauds.[9] See Trebor Corp. v. Nutmeg Indus., Inc., 208 Ga. App. 697, 697, 431 S.E.2d 402

---

[9] Diamond Crystal also argues that an indefinite contract would violate the rule against perpetuities. As even a law student studying Introduction to Property Law knows, this rule applies only to interests in property. See, e.g., Uniform Statutory Rule Against Perpetuities, O.C.G.A. § 44-6-201. It has absolutely no place in a case involving a contract dispute and claims of antitrust violation.

14

(1993)(oral contracts for permanent distributorships violate the statute of frauds and are unenforceable); <u>Atlanta Dairies Coop. v. Grindle</u>, 182 Ga. App. 409, 410, 356 S.E.2d 42 (1987)(same). For these reasons, Food Mover's breach of contract counterclaim must fail.

## CONCLUSION

Because Defendant Food Movers has failed to establish the facts necessary to support either its antitrust or contract counterclaims, Plaintiff Diamond Crystal's Motion for Summary Judgment is **GRANTED**. All claims having now been adjudicated, the Clerk of Court is **DIRECTED** to lift the stay placed upon enforcement of the June 20, 2008 judgment in favor of Diamond Crystal. The Clerk of Court is **DIRECTED** to **CLOSE** this case.

SO ORDERED this 21ST day of July, 2008.

WILLIAM T. MOORE, JR., CHIEF JUDGE
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA